**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JAMES WILBORN, | :: | PRISONER CIVIL RIGHTS |
|    Plaintiff, | :: | 42 U.S.C. § 1983 |
| | :: | |
| v. | :: | |
| | :: | |
| LT. GRAHAM, and OFFICER | :: | CIVIL ACTION NO. |
| DOZIER, | :: | 1:15-CV-4153-WSD-RGV |
|    Defendants. | :: | |

## FINAL REPORT AND RECOMMENDATION

This case is proceeding on plaintiff James Wilborn's ("plaintiff") excessive force claims against Lieutenant Graham and Officer Dozier ("defendants"). [Doc. 12]. Specifically, plaintiff alleges that, on April 25, 2014, Officer Dozier unjustifiably attacked plaintiff while plaintiff was handcuffed, and on April 29, 2014, Lieutenant Graham twice tased plaintiff without reason while plaintiff was "soaking wet." [Doc. 3 at 3-4, 6-8]. This matter is now before the Court on Lieutenant Graham's motion for summary judgment, [Doc. 25], plaintiff's statement of material facts, [Doc. 30], which is construed as a response in opposition to Lieutenant Graham's motion for summary judgment,[1] and respondent's objection and response to plaintiff's statement of material

---

[1] Plaintiff also "pleads for an extension **if it's needed**." [Doc. 30 ¶ 5 (emphasis added)]. However, it is not clear that plaintiff seeks an extension at this time and further does not show good cause for an extension. Plaintiff also states that "he will

facts, [Doc. 31]. For the reasons that follow, it is **RECOMMENDED** that Lieutenant Graham's motion for summary judgment, [Doc. 25], be **GRANTED**. It is **FURTHER RECOMMENDED** that plaintiff's claims against Officer Dozier be **DISMISSED WITHOUT PREJUDICE** for lack of service of process.

I.  **LIEUTENANT GRAHAM'S MOTION FOR SUMMARY JUDGMENT**

   A.   **Statement of Facts**[2]

   On April 29, 2014, Lieutenant Graham, who was assigned as a supervisor, arrived on the floor for a security check and heard someone banging and kicking on the pod door.[3] [Doc. 25-3 ¶ 5]. Lieutenant Graham noticed Sergeant Howard having

---

now order the Jail to obtain" certain documents and evidence for him. [Id. ¶ 6]. To the extent that plaintiff seeks discovery, this prisoner case was automatically assigned to a zero-month discovery track, and the deadline to move for a discovery period has expired. See [Docs. 13; 24].

[2] These facts are drawn from Lieutenant Graham's statement of undisputed material facts, [Doc. 25-2], and are supported by the record as indicated. Because plaintiff failed to respond to Lieutenant Graham's statement of undisputed material facts, they are deemed admitted. See LR 56.1B(2)a(2), NDGa; Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008). Although plaintiff has filed a statement of material facts, [Doc. 30], the Court does not consider those facts that are not supported by citations to evidence. See See LR 56.1B(1), (2)b, NDGa.

[3] Plaintiff maintains that this statement by Lieutenant Graham is merely an attempt "to make plaintiff out to be aggressive," and plaintiff notes that Lieutenant Graham's Incident Report does not mention "banging and kicking," but states only that the lieutenant observed plaintiff having a discussion with Sergeant Howard and

a conversation with plaintiff over the intercom. [Id. ¶ 6]. Lieutenant Graham observed plaintiff remove his clothing, with the exception of his boxer shorts, and enter the shower, wetting his body. [Id. ¶ 7]. Plaintiff began pacing the dayroom in an outwardly aggressive manner, clinching his fists, screaming profane language, and kicking the dayroom door. [Doc. 25-3 ¶ 8; Doc. 27]. Lieutenant Graham and Office Allen entered the pod, and Officer Allen gave verbal commands for plaintiff to put his back to the wall. [Doc. 25-3 ¶ 9]. Plaintiff stated, "F**k all you officers. Y'all ain't shit. I ain't doing nothing." [Id. ¶ 10]. As Officer Allen moved towards plaintiff, Lieutenant Graham instructed Officer Allen to move to the side, and Lieutenant Graham deployed his X-26 TASER. [Id. ¶ 11; Doc. 27]. The deployment was unsuccessful, as only one probe made contact with plaintiff's upper torso area. [Doc. 25-3 ¶ 12].

Plaintiff removed the darts and retreated back to the shower, again wetting his body. [Id. ¶ 13]. Plaintiff was given verbal commands to exit the shower and put his hands behind his back. [Id. ¶ 14]. Because plaintiff failed to comply with this verbal

---

that plaintiff "became upset" when that discussion concluded. [Doc. 30 ¶¶ 2-3]; see also [Doc. 25-3 at 10]. The Court finds that the Incident Report does not contradict Lieutenant Graham's affidavit and that plaintiff fails to properly dispute or deny this statement. Moreover, the surveillance video clearly shows plaintiff repeatedly kicking the door. See [Doc. 27].

3

command, Lieutenant Graham once again deployed his X-26 TASER. [Id. ¶ 15; Doc. 27]. The darts struck plaintiff in his left pectoral area and abdominal area. [Doc. 25-3 ¶ 16]. Plaintiff fell to the floor, and Officer Allen secured plaintiff in handcuffs. [Id. ¶17]. Lieutenant Graham, Sergeant Howard, and Officer Allen then escorted plaintiff to the third floor medical unit. [Id.].

Lieutenant Graham completed a Jail Incident Report, which was reviewed by his supervisor, Lieutenant Hill. [Id. ¶ 18]. Lieutenant Hill also completed a Use of Force Report, and both Lieutenant Hill and the Office of Professional Standards determined that Lieutenant Graham's use of force was within DKSO Policy 10-9, which governs the use of force by members of the DeKalb County Sheriff's Office. [Id. ¶¶ 19-20]. According to this policy, TASERS are used to humanely incapacitate violent or otherwise harmful individuals. [Id. ¶ 21]. An X-26 TASER probe hit causes electro-muscular disruption, physically disabling the target. [Id.].

DKSO Policy 10-9 further provides that the TASER device shall be used only in situations which demand the need for incapacitating an individual who poses a threat of immediate bodily harm to the sworn officer, the individual, or a third party. [Id. ¶ 22]. Pursuant to this policy, the TASER device is specifically authorized for use in any situation where the sworn officer reasonably believes that the subject, by their

4

actions, offers, or imminently intends to offer, physical resistance to arrest, being taken into local custody, or other lawful action by the sworn officer. [Id. ¶ 23]. According to this policy, the TASER shall be used as an alternative to physical combat (i.e., use of fists, ASP or other similar physical force) when such force is required. [Id. ¶ 24].

At the time of the incident, plaintiff was non-compliant, unruly, disorderly, and demonstrated aggressive and hostile behavior. [Id. ¶ 25; Doc. 27]. Lieutenant Graham became concerned that plaintiff would hurt either himself or Officer Allen and believed that plaintiff demonstrated imminent physical resistance to commands. [Doc. 25-3 ¶ 26]. In an attempt to neutralize the situation and gain control of plaintiff, Lieutenant Graham, pursuant to his professional judgment and expertise, decided to tase plaintiff twice. [Id. ¶ 27; Doc. 27]. Only after Lieutenant Graham tased plaintiff the second time was Officer Allen able to restrain plaintiff. [Doc. 25-3 ¶ 28]. Additionally, the entry in the Log Book regarding this incident states:

> noncompliant inmate Pod 600 Day room . . . started to hit and kick door . . . started to yell at Sgt. Graham and Sgt. Howard while D/O Allen stood and ask [sic] him to get on wall . . . inmate stood yelling and yelling walking around in day rom took his clothes off . . . Both Sgt. ask him to get on wall inmate refused and yelled at both [of] them . . . Sgt. Graham tased him he fell to ground. D/O Allen handcuff him. All three escort[ed] to Medical 3rd Floor.

5

[Doc. 25-4 at 2].

### B. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute as to any material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden may be discharged by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Id. at 325. In determining whether the moving party has met this burden, the district court must "view the evidence and all factual inferences . . . in the light most favorable to the party opposing the motion." Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted).

Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmovant may not rest upon mere allegations or denials contained in his pleadings. Anderson v. Liberty Lobby,

6

Inc., 477 U.S. 242, 249 (1986). Additionally, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to defeat summary judgment. Id. at 252. Rather, the court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Id.

### C. Analysis

Lieutenant Graham argues that he is entitled to qualified immunity on plaintiff's excessive force claim. [Doc. 25-1]. Plaintiff responds that Lieutenant Graham's use of force was neither justified nor reasonable. [Doc. 30].

Government officials sued in their individual capacities are immune from suit if their alleged conduct does not violate clearly established federal rights of which a reasonable person would have known. Brown v. City of Huntsville, Ala., 608 F.3d 724, 733 (11th Cir. 2010). To obtain qualified immunity, the official must first show that he was acting within the scope of his discretionary authority when the allegedly unconstitutional events occurred. Id. at 734 n.14. If he does so, the plaintiff must satisfy a two-part inquiry to defeat qualified immunity. Pearson v. Callahan, 555 U.S. 223, 231, 236 (2009). One part of this inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. Brown, 608 F.3d at 734. The other part

7

of this inquiry is whether the right violated was clearly established at the time the official acted. Id. The official loses qualified immunity only if the plaintiff satisfies both inquiries, id., and courts may conduct the two-part inquiry in whatever order they deem appropriate, Pearson, 555 U.S. at 236.

In this case, it is undisputed that Lieutenant Graham acted within the scope of his discretionary authority at all material times. Accordingly, plaintiff must demonstrate that Lieutenant Graham is not entitled to qualified immunity. See Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004) ("Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity.").

In order to prove an excessive force claim under the Due Process Clause, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'" and "[a] court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citations omitted). Factors to be considered in this inquiry are:

8

the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. (citation omitted). Courts "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam) (citation omitted).

Applying the Kingsley factors to the undisputed evidence in this case, force was necessary because plaintiff refused to comply with verbal commands and displayed aggressive and hostile behavior by removing his clothing, wetting his body, pacing the dayroom, clinching his fists, screaming profanity, and kicking the dayroom door. [Doc. 25-3 ¶¶ 7-10, 13-15, 25; Doc. 25-4 at 2; Doc. 27]. Lieutenant Graham tased plaintiff in accordance with jail policy, which provides that a TASER "shall" be used as an alternative to physical combat when force is required to incapacitate an inmate who, like plaintiff, demonstrates aggressive and hostile behavior and imminent physical resistance to an officer's commands. [Doc. 25-3 ¶¶ 11-12, 16, 19, 21-27; Doc. 25-4 at 2; Doc. 25-3]. Lieutenant Graham tased plaintiff a second time after the first use of the TASER proved ineffective, and plaintiff was subdued only after the

9

second tase. [Doc. 25-3 ¶¶ 12-17, 28; Doc. 27]. "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam) (internal quotation marks omitted).

Furthermore, plaintiff has not submitted any evidence to show that he suffered any injury. Lieutenant Graham's use of his X-26 TASER proved a successful attempt to temper or limit the amount of force needed, as TASERS are used to humanely incapacitate an unruly inmate without the necessity for physical combat. [Doc. 25-3 ¶¶ 21, 24]. Lieutenant Graham was concerned that plaintiff could harm himself or the officers present, and thus, pursuant to his professional judgment and expertise, Lieutenant Graham reasonably decided to tase plaintiff twice. [Id. ¶¶ 26-27]. Plaintiff had refused to comply with the officers' commands and demonstrated aggressive and hostile behavior. [Id. ¶¶ 9-10, 13-15; Doc. 27]. Under these circumstances, "the use of a taser was a reasonable means of attempting to enforce compliance without precipitating a dangerous physical confrontation." Howell v. Houston Cnty., Ga., No. 5:09-CV-402, 2011 WL 3813291, at *20 (M.D. Ga. Aug. 26, 2011). Accordingly, there is no genuine issue for trial, and the force used by Lieutenant Graham was objectively reasonable and not excessive. See Kingsley, 135 S. Ct. at 2473.

10

## II.  PLAINTIFF'S FAILURE TO SERVE OFFICER DOZIER

On October 6, 2016, the Court entered an order directing service on defendants. [Doc. 13].  After Officer Dozier failed to return an executed Waiver of Service form, the U.S. Marshals Service attempted to serve him with process at the DeKalb County Jail, the address provided by plaintiff, but was unable to do so because Officer Dozier is no longer employed by DeKalb County and because no forwarding address was available.  [Doc. 21].  Accordingly, on February 28, 2017, the Court entered an order directing plaintiff to provide a valid address for Officer Dozier within twenty-one days.  [Doc. 24 at 2].  The Court advised plaintiff that failure to timely respond may result in the dismissal of his claim against Officer Dozier.  [Id.].  More than twenty-one days have passed, and plaintiff has not provided a valid address for Officer Dozier or otherwise responded to the order.

When plaintiff filed this action in November of 2015, [Doc. 1], Rule 4(m) of the Federal Rules of Civil procedure provided:

> If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

11

Fed. R. Civ. P. 4(m) (2014).[4]  For a prisoner litigant, who must await a court decision allowing his case to proceed and who must rely on court officials to issue and serve process, the 120-day period generally begins when the court "authorizes the issuance of the summons and service of the complaint." Goni v. Halloran, No. 07-21759-CIV, 2008 WL 5111262, at *1 (S.D. Fla. Dec. 3, 2008) (citation omitted).  In this case, the 120-day period began to run on October 6, 2016, when the Court ordered service on defendants, and expired on February 13, 2017.  Thus, plaintiff's claim against Officer Dozier is due to be dismissed for lack of service of process.  See Smith v. Belle, 321 F. App'x 838, 845 (11th Cir. 2009) (per curiam) (affirming dismissal for lack of service of process where prisoner proceeding in forma pauperis in 42 U.S.C. § 1983 action failed to provide current address for defendant after U.S. Marshal was unable to serve defendant, despite court's warning that failure to do so could result in dismissal).[5]

---

[4] Although Rule 4(m) was amended by reducing the time to perfect service from 120 to 90 days, the Court has applied the 120 day limit since this case was filed prior to the amendment's December 1, 2015, effective date.  Flewellen v. City of Macon, Ga., No. 5:15-CV-86 (LJA), 2016 WL 5662026, at *2, n.2 (M.D. Ga. Sept. 29, 2016).

[5] Plaintiff has not requested an extension of time to serve Officer Dozier, but the Court has considered whether a discretionary extension of time is warranted and concludes that it would be futile to extend the time for plaintiff to perfect service upon Officer Dozier as he has already had ample time to provide a current address for

### III.  CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Lieutenant Graham's motion for summary judgment, [Doc. 25], be **GRANTED** and that plaintiff's claims against Officer Dozier be **DISMISSED WITHOUT PREJUDICE** for lack of service of process.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**IT IS SO ORDERED** this 18th day of MAY, 2017.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

Officer Dozier but has failed to do so. See Walker v. Firestone, Civil Action No. 2:07-CV-0105-RWS, 2008 WL 2744391, at *3 (N.D. Ga. July 11, 2008) (discretionary extension denied where the Court was "convinced that exercising its discretion to extend the period of time for service of process would be futile").